FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DAVID WYNTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 13-1466 |
| | ) |
| MERISA WILSON, DONALD J. GISH, | ) |
| VICKIE KENDRICK, PAT HASTINGS, | ) |
| and GINA ALLEN, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTION
## FOR SUMMARY JUDGMENT

Defendant Merisa Wilson has filed a Motion for Summary Judgment. She argues lack of any retaliation and qualified immunity. The Motion [48] is denied.

### BACKGROUND

Plaintiff, David Wynter, #N04231, is an inmate with the Illinois Department of Corrections.  The allegations in Plaintiff's complaint arise out of his time at Pontiac Correctional Center.

Plaintiff asserts a violation of his First Amendment Rights. Specifically, Plaintiff alleges that Nurse Wilson retaliated against him on October 11, 2011, and November 15, 2011, by filing retaliatory discipline complaints against him after he complained to her supervisors that she had given him the wrong psychotropic medications.  Defendant Wilson responds that she did not retaliate against him and is entitled to qualified immunity.

Wilson is a licensed practical nurse in the state of Illinois.  At the times relevant to this action, Wilson worked at Pontiac Correctional Center, where Wynter was incarcerated.  Wynter had been treated for post-traumatic stress disorder and chronic depression, taking psychotropic medications for 22 years.

On October 11, 2011, Wilson was passing out medication to Wynter in the ECH 7 Gallery.  She states in her sworn affidavit that at that time, Wynter stood at the cell door and masturbated in front of her, ignoring a direct order to cease his conduct.  Wilson filed a formal disciplinary report alleging sexual misconduct, insolence, and disobeying a direct order that day based on the incident.   Wynter denied the allegations.  The Adjustment Committee's Final

1

Summary Report dated October 14, 2011, states that Officer Metropoulos, who had been listed as a witness, was contacted and stated that Wynter was masturbating. The Committee was satisfied that the violation had occurred as reported, and Wynter received one year in C grade, one year of segregation, revocation of good conduct credit or good time for six months, and one year of audio-visual restriction. Wynter was advised of his right to appeal the decision.

On November 15, 2011, Wilson filed another formal disciplinary report for intimidation/threats and insolence against Wynter indicating that when she was passing out medications in his gallery, he "became disrespectful, annoying, and threatening by yelling, 'I'm not gonna take any meds from no LPN! I'll take my meds when you get some integrity! Get the fuck off my door bitch or else!" Wynter denied having made any threats to Wilson. The Adjustment Committee's November 23, 2011, Final Summary Report indicates that Officer Borrego, who had been listed as a witness, was contacted and stated that he did not recall any threats being made to Nurse Wilson. The Adjustment Committee was satisfied that the violation for insolence had occurred but found him not guilty of the more serious charge of intimidation/threats. Wynter received three months in C grade, one month segregation, and three months audio/visual restriction. He was again advised of his right to appeal the decision.

On December 27, 2011, Wynter filed a grievance challenging the November 15, 2011, disciplinary action. However, the summary of the grievance first refers to the October 11, 2011 disciplinary report, alleging that he talked to Officer Metropoulos and that he confirmed Wynter's assertion that the incident alleged by Nurse Wilson did not occur and that he had not been contacted by the Adjustment Committee. He then refers to the hearing on the November 15, 2011, disciplinary report where Officer Borrego confirmed his assertion that he did not threaten Nurse Wilson before concluding that it was highly unlikely that Officer Metropolous would have just stood there and done nothing while he masturbated in front of a female that he was escorting. The Grievance Officer reviewed the disciplinary report, the Final Summary Report of the Adjustment Committee, and all other available information. Based on this review, the Grievance Officer found that the disciplinary report was completed in compliance with the regulations, that it contained sufficient information to substantiate the charges, that Wynter had been properly served with a copy of the report, that the Adjustment Committee reviewed the report within 14 days, that requested witnesses were consulted, that the basis for the decision contained two complete rationales in support, and that documentation reflected appropriate composition of the committee with at least one of the individuals being a minority. The Grievance Officer recommended that the grievance be denied, and the Chief Administrative Officer concurred in the recommendation.[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of

---

[1] Wilson includes references to several other disciplinary incidents involving Wynter and other correctional employees, which were not considered by the Court as they were not relevant to the issue before the Court and could be considered a prohibited use of character evidence under Fed.R. Evid. 404.

law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the evidence, however, is "merely colorable, or is not significantly probative or merely raises 'some metaphysical doubt as the material facts,' summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. Overall, "[s]ummary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Durkin v. Equifax Check Services*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003)). Summary judgment is mandated when, after adequate time for discovery, the party who bears the burden of proof fails to make a showing sufficient to establish an essential element of that party's case. *Celotex*, 477 U.S. at 323.

Thus, in order to overcome the undisputed facts set forth in defendants' motion for summary judgment, plaintiff cannot rest on the allegations in his complaint but must point to affidavits, depositions or other evidence of an admissible sort that a genuine dispute of material fact exists between parties. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

**First Amendment Retaliation**

To state a claim for retaliation under the First Amendment, a plaintiff must show: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012); *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008). Here, Wynter alleges that "at least a month and a half" before Wilson issued her first disciplinary report against him, he had complained to Dr. Matthews and the Director of Nursing that Nurse Wilson was providing him the wrong medication and questioned whether she was qualified to be distributing medications to inmates. (Response [49] at 4). He then states that "within two weeks after I made the first complaint, the defendant wrote me the first deliberately fabricated disciplinary in retaliation." *Id.* He then wrote a letter to Wexford complaining about Nurse Wilson's job performance being unprofessional and giving him the wrong medication. On November 15, 2011, the same day that he received a response from Wexford to his letter, Nurse Wilson issued the second knowingly fabricated disciplinary report. Wynter sent a complaint to IDOC Director Godinez challenging this disciplinary report and complaining of Nurse Wilson's retaliation on December 3, 2011. Wynter then alleges that Nurse Wilson repeatedly passed his cell on five days in August 2012 and one day in September 2012 without giving him his medication, which caused him to file a grievance on September 27, 2012.

Wynter has sufficiently demonstrated that he engaged in protected activity by filing complaints and grievances regarding Nurse Wilson's professional negligence in the alleged provision of the wrong psychotropic medication to him. He has further demonstrated that he received disciplinary reports that resulted in him being categorized as a C grade, placed in segregation, loss of good conduct credit, and did not receive his medication for several days. The Court cannot find as a matter of law that this is insufficient to deter First Amendment activity in the future. This leaves the question of whether Wynter has made a sufficient showing

3

that his First Amendment activity was at least a motivating factor in Wilson's purported retaliation.

Wilson asserts that Wynter has no evidence proving that she was even aware that he had filed a complaint or written letters complaining about her, citing to his deposition testimony where he stated that he didn't have any evidence but was cut off by counsel before he could finish or explain his answer. He also states in his deposition that he spoke to Officer Metropolous, who indicated that he was not interviewed by the Adjustment Committee and was not even aware that Wilson had issued a disciplinary report, as well as the fact that if anything like that had occurred, it would have been his responsibility to issue the disciplinary report. Wynter also points to the fact that Officer Borrego did not confirm Wilson's allegations that Wynter had threatened her as she claimed in the second disciplinary report and his subsequent acquittal of that charge as evidence were retaliatory rather than fact-based. This, in combination with the timing alleged, is marginally enough to survive summary judgment on this ground.

Wilson next contends that there is no evidence that the retaliation rose to the level of a constitutional violation. To be actionable, the alleged retaliation "must have the effect of deterring an inmate of ordinary firmness from engaging in similar activity." *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982). Wynter conceded in his deposition that he was not prevented from filing a lawsuit or grievance while at Pontiac and was fully aware of his rights. However, the fact that Wynter may be unusually persistent does not end the inquiry as the standard is whether an "inmate of ordinary firmness" would be deterred. The Seventh Circuit has held that the threshold for making this showing is relatively low and that the harassment need not be extreme. *Massey v. Johnson*, 457 F.3d 711, 720 (7th Cir. 2006) (finding that retaliatory harassment violates the First Amendment unless the harassment is so trivial that a person of ordinary firmness would not be deterred from expressing his beliefs.) Alleged harassment by prison employees in a variety of ways over a period of several months could deter a person of ordinary firmness from exercising his First Amendment rights. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). A campaign of petty harassments including reprimands and ridicule could deter free speech. *Bart*, 677 F.2d at 625. Minor forms of retaliation and false accusations may also be actionable. *DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995). Wynter survives summary judgment on this ground, as well.

Third, Wilson maintains that there has been no evidence of injury, as Wynter testified in his deposition that he did not take the improper medication that was given to him and only received it on one occasion. This argument is misplaced. The retaliation that allegedly caused injury was not the giving of the wrong medication; rather, it was the filing of disciplinary grievances against him after he complained about Wilson giving him the wrong meds and questioned her competence. The injury comes with the discipline that he received as a result of those disciplinary reports.

Finally, Wilson claims that she is entitled to qualified immunity. In <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), the United States Supreme Court enunciated the "modern standard to be applied in qualified immunity cases." <u>Auriemma v. Rice</u>, 895 F.2d 338, 341 (7th Cir. 1990). The Court stated:

> Governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Harlow</u>, 457 U.S. at 818. The test for qualified immunity is "whether the law was clear in relation to the specific facts confronting the public official when [he or she] acted." <u>Green v. Carlson</u>, 826 F.2d 647, 649 (7th Cir. 1987). In deciding whether a defendant will enjoy qualified immunity, courts must determine: "(1) whether the plaintiff has asserted a violation of a federal right, and (2) whether the constitutional standards implicated were clearly established at the time in question." <u>Eversole v. Steele</u>, 59 F.3d 710, 717 (7th Cir. 1995), *citing* <u>Kernats v. O'Sullivan</u>, 35 F.3d 1171, 1176 (7th Cir. 1994); <u>Cavalieri v. Shepard</u>, 321 F.3d 616, 620 (7th Cir. 2003). The first issue is a threshold one. <u>Scott v. Harris</u>, 127 S.Ct. 1769, 1774 (2007), *citing* <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). If the plaintiff fails to state a violation of a federal right, then the plaintiff's claim fails altogether and the court need not go on to decide whether the law was clearly established at the time of the offense. <u>Id</u>.; *see also,* <u>Marshall v. Allen</u>, 984 F.2d 787, 793 (7th Cir. 1993); <u>Zorzi v. County of Putnam,</u> 30 F.3d 885, 892 (7th Cir. 1994); <u>Eversole</u>, 59 F.3d at 717.

In outlining the approach a court must take in addressing qualified immunity, the Seventh Circuit has advised:

> Once the defendant's actions are defined or characterized according to the specific facts of the case this characterization is compared to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law.

<u>Landstrom v. Ill. Dept. of Children & Family Serv.</u>, 892 F.2d 670, 675 (7th Cir. 1990), *quoting* <u>Rakovich v. Wade</u>, 850 F.2d 1180, 1209 (7th Cir. 1988) (en banc), *cert. denied*, 109 S.Ct. 497 (1989). The Seventh Circuit has held that "a plaintiff may overcome a claim of qualified immunity by presenting case law that 'has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand.'" <u>Doyle v. Camelot Care Centers, Inc.</u>, 305 F.3d 603, 620 (7th Cir. 2002), *citing* <u>Chan v. Wodnicki</u>, 123 F.3d 1005, 1007 (7th Cir.1997). The Court of Appeals went on to find that the "simple existence of analogous case law" does not defeat the claim of qualified immunity, but rather only decisions demonstrating that, "at the time the defendants acted, it was certain that their conduct violated the law." <u>Id.</u>, *citing* <u>Duda v. Bd. of Educ.</u>, 133 F.3d 1054, 1062 (7th Cir.1998) (indicating that the case law must "dictate" that the defendants' conduct violated the constitution). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held

5

unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent."
Id., *citing* Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002).

Wilson's argument is again misplaced. She suggests that there is no evidence that she did not see Plaintiff in the course of her employment as a nurse and provided care and treatment to him to the best of her medical judgment. However, whether she really gave Wynter the wrong medication or was professionally incompetent is not the issue here. The issue is whether Wilson was motivated by complaints made against her by Wynter in filing purportedly false disciplinary reports against him. She has therefore failed to demonstrate entitlement to qualified immunity. Accordingly, this claim must remain for trial.

There is a trend in pro se prisoner cases that facts establish little merit or chance of success, but ultimately are able to survive summary judgment. This is one of those cases. While Wilson says one thing, Wynter says the opposite, creating a question of fact that cannot be resolved on the record before the Court. That being said, it appears that more could have been done to develop the record here. There are references in the docket to a video from the institution that may have definitively resolved this claim, but it is not before the Court. An affidavit from Officer Metropoulos could have shed considerable light on the first disciplinary report, as well as the suggestion of fraud in the administrative proceedings, but this is not before the Court. If such a sworn statement had been presented and had in fact supported Wilson's version of events, the balance of circumstantial evidence may not have tipped in favor of finding a sufficient showing that Wynter's speech was at least a motivating factor in Wilson's conduct.

## CONCLUSION

For the reasons set forth above, Defendant Wilson's Motion for Summary Judgment [48] is DENIED.

ENTERED this 17th day of March, 2016.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge